UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY SUE F.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 8:20-cv-01267-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Kimberly Sue F. ("Plaintiff") filed a Complaint on July 15, 2020, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issue in dispute on March 10, 2021. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

On September 29, 2010, Plaintiff applied for DIB, alleging disability beginning October 2, 1999. Administrative Record ("AR") 160-68. After her application was denied initially (AR 63-66), and on reconsideration (AR 69-75), the first of three administrative hearings were held regarding Plaintiff's claim on April 6, 2012. AR 29-60, 76-77. Plaintiff, represented by counsel, appeared in Madison, Indiana, and testified via video before Administrative Law Judge ("ALJ") Kristen King presiding in Cincinnati, Ohio. AR 29-60. A vocational expert ("VE") and a third-party witness also testified. Id. On July 23, 2012, the ALJ issued a written decision finding Plaintiff was not disabled. AR 15-25.

After the Appeals Council denied Plaintiff's request for review (AR 7-9), Plaintiff appealed to United States District Court for the Central District of California. On December 4, 2014, Magistrate Judge David T. Bristow reversed and remanded the matter for further proceedings to consider the medical evidence regarding Plaintiff's neck limitation. AR 514-22. On January 28, 2015, the Appeals Council vacated the Commissioner's prior decision and remanded the case to an ALJ for further proceedings consisted with the District Court's order. AR 523-25. ALJ John W. Wojciechowski convened a second hearing on July 6, 2015, in Orange, California. AR 424-65. Plaintiff, represented by counsel, testified in person at the hearing, as did a VE. Id. On August 12, 2015, the ALJ issued a written decision, incorporating by reference the summary of the medical evidence from the prior decision, added new medical evidence of record, and found Plaintiff was not disabled. AR 409-18.

Plaintiff filed exceptions with the Appeals Council, and on July 9, 2016, the Appeals Council declined to assume jurisdiction, making the second ALJ decision the Commissioner's final decision. AR 400-03. Plaintiff again appealed to United States District Court for the Central District of California.

On July 14, 2017, the undersigned found the ALJ erred in considering the issue of neck motion in the RFC and remanded the matter for further proceedings. AR 925-39; See Kimberly Sue F. v. Berryhill, 2017 WL 3027195 (C.D. Cal. July 14, 2017). On August 15, 2017, the Appeals Council vacated the prior decision and remanded the case to an ALJ for further proceedings consisted with this Court's order. AR 915-918. ALJ Sharilyn Hopson held a third hearing on December 13, 2018, in San Bernardino, California. AR 858-878. Plaintiff, still represented by counsel, appeared and testified. AR 859-861, 868-69. A VE and Medical Expert ("ME") Dr. Eric Schmitter testified telephonically. AR 859, 861-77.

On January 18, 2019, the ALJ issued a written decision finding Plaintiff was not disabled. AR 840-49. The ALJ found Plaintiff last met the insured status requirements on March 31, 2005, did not engage in substantial gainful activity from her October 2, 1999 alleged onset date to the date last insured, and had the severe impairments of cervical degenerative disc disease, status post discectomy and fusion; and bilateral carpal tunnel syndrome during that period. AR 842-44. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 844), and she had the residual functional capacity ("RFC") to perform light work[2] except with the following limitations (AR 844-47):

---

[2] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Aide R. v. Saul, 2020 WL 7773896, at *2 n.6 (C.D. Cal. Dec. 30, 2020).

> [L]ift and carry 10 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; occasionally climb, balance, stoop, kneel, crouch[,] or crawl; no climbing ladders, ropes[,] and scaffolds; occasionally reach overhead bilaterally; occasionally look directly up; and frequently handle, finger[,] and feel with the upper extremities.

The ALJ defined "occasionally" as "occurring from very little up to one-third of the time, or approximately 2 hours in an 8-hour workday. AR 844. The ALJ defined "frequently" as "occurring from one-third to two thirds of the time or approximately 6 hours in an 8-hour workday." Id.

The ALJ next found that Plaintiff was unable to perform her past relevant work as a cashier, checker (Dictionary of Occupational Titles ["DOT"] 211-462-014). AR 847. The ALJ also found that Plaintiff has a limited education and can communicate in English. Id.

The ALJ then found that, if Plaintiff had the RFC to perform a full range of light work, a Medical-Vocational rule would direct a finding of not disabled. AR 848. But, as Plaintiff's ability to perform all or substantially all the requirements of light work was impeded by additional limitations, the ALJ consulted the testimony of the VE. Id. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including: photocopy machine operator (Dictionary of Occupational Titles ("DOT") 207.685-014), housekeeping cleaner (DOT 323.687-014), and parking lot attendant (DOT 915.473-010). Id. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act ("SSA"), from the alleged onset date until the date she was last insured. AR 849.

On March 21, 2019, the Appeals Council declined to assume jurisdiction, making the third ALJ decision the Agency's final decision. AR 831-36, 1120-26.

# II.
# LEGAL STANDARDS

**A.**     **Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

B. **The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can

do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show she is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present one disputed issue: whether the ALJ properly considered the examining opinion of Dr. Harry Marinow. Jt. Stip. at 5. Specifically, Plaintiff contends that Dr. Marinow used terms of art related to California worker's compensation, such as "repetitive," and the ALJ erred by failing to translate the terms in his opinion and provide reasons for rejecting Plaintiff's limitation. Id. at 8, 13.

### A. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

**B.   Analysis**

In March 2005, Dr. Marinow, a qualified medical examiner in Plaintiff's workers' compensation claim, performed an agreed medical evaluation. AR 384-96.[3] He noted Plaintiff's work history as a cashier and the onset of worsening neck pain beginning in 1995. AR 385, 394. He reviewed her treatment history, which included cervical spine surgery in November 2000. AR 386, 389, 392. He related that surgery initially provided benefit to her arm pain, but her neck pain continued and worsened. AR 386. She was referred to an orthopedic surgeon and, following a computed tomography ("CT") scan, her condition was deemed "permanent and stationary" in July 2002. AR 386. After examination, Dr. Marinow diagnosed Plaintiff with "[c]ervical spine pain syndrome with past history of anterior cervical discectomy interbody fusion with anterior cervical internal fixation at the C5-6 interspace . . . and left paracentral disc protrusion at the C6-7 interspace" and bilateral wrist history of carpal tunnel syndrome. AR 392. He opined that Plaintiff should observe

---

[3] The evaluation appears at least twice in the record. AR 139-51, 384-96. The Joint Stipulation cites to the evaluation as it first appears in the record. See Jt. Stip. at 6-7; AR 139-51. However, to maintain consistency with the ALJ's decision, the Court cites to the evaluation found later in the record. AR 384-96, 845-46.

prophylactic work restrictions related to her cervical spine, including preclusion of repetitive motion of the neck, and a restriction of fine manipulation bilaterally. AR 395. In terms of future medical care, Dr. Marinow discussed Plaintiff's options, including conservative care and cervical epidural steroid injections, and stated that at some point she may require another cervical discectomy interbody fusion surgery. Id. He designated her as a "Qualified Injured Worker" and opined that her condition has remained permanent and stationary since July 2002. AR 392, 395-96.

The ALJ summarized much of Dr. Marinow's opinion and acknowledged various findings including the prophylactic work restrictions. AR 845-46. She noted the ME's testimony that, regarding neck motion, "only looking up would matter," and found that the restrictions outlined in the RFC were consistent with Dr. Marinow's prophylactic work restrictions concerning the cervical spine. AR 846. The ALJ assigned "some weight" to Dr. Marinow's opinion because he had the opportunity to review Plaintiff's records and examiner her. AR 847. However, she discounted the opinion because Plaintiff's "limited treatment history, her significant treatment gap after the date last insured, her activities, the lack of objective findings concerning her hands/wrists and Dr. Marinow's opinion regarding future treatment of [Plaintiff]'s hands/wrists do not support the extent of his prophylactic work restrictions, especially concerning her ability to use her hands/wrists." AR 847.

The Court finds the ALJ's analysis of the opinion is insufficient, for the following reasons.

The opinion contains terms or phrases subject to differing interpretations, and terms of art used in the workers' compensation system—such as "qualified injured worker," "permanent and stationary," and, of particular relevance here, "repetitive"—were not explained or translated in the

9

decision. See Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (finding ALJ's decision was not supported by substantial evidence because ALJ had not adequately considered definitional differences between workers' compensation system and Social Security Act); Khanh Giang v. Berryhill, 2019 WL 631898, at *14 (C.D. Cal. Feb. 14, 2019) (noting that numerous cases have "held that the ALJ must address and incorporate the meaning of the term 'repetitive' in a Social Security disability opinion"); Echaury v. Astrue, 2013 WL 436007, at *4 (C.D. Cal. Feb. 4, 2013) ("'Repetitive' is a term of art in the California Workers' Compensation system" and the ALJ erred by failing to translate it into corresponding social security terminology); Fuentes v. Comm'r Soc. Sec. Admin., 2013 WL 140290, at *4 (C.D. Cal. Jan. 7, 2013) (ALJ erred by failing to explain significance of "permanent and stationary" finding for the purposes of the social security disability evaluation); Hung Thanh Le v. Astrue, 2010 WL 1854081, at *3-5 (C.D. Cal. May 6, 2010) (ALJ erred by failing to translate workers' compensation findings, which included "qualified injured worker," into social security terms).

     Plaintiff persuasively demonstrates that, in workers' compensation parlance, "a restriction from 'repetitive' motion indicates a 50% loss of pre-injury capacity." Jt. Stip. at 8; See Alvarado v. Comm'r Soc. Sec., 2018 WL 4616344, at *5 (C.D. Cal. Sept. 24, 2018) (noting Commissioner does not dispute that definition); Echaury, 2013 WL 436007 at *4. The ALJ does not acknowledge this definition. In the RFC, the ALJ defined "frequently" and "occasionally," and later found Dr. Marinow's work restriction regarding Plaintiff's cervical spine consistent with the RFC. AR 844, 846. But nowhere did the ALJ equate Dr. Marinow's "repetitive" restriction to either of the social security terms, and, based on the record, it cannot be said that the terms mean the same thing. See Macapagal v. Astrue, 2008 WL 4449580, at *3

(N.D. Cal. Sept. 29, 2008) (restriction from repetitive work equivalent to neither a limitation to frequent nor a limitation occasional work). Indeed, the Ninth Circuit has observed—although not in the workers' compensation context—that "repetitively . . . appears to refer to a qualitative characteristic," i.e., how or what type of motion is required, whereas "frequently . . . seem[s] to describe a quantitative characteristic," i.e., how often one uses his hands in a certain manner. See Gardner v. Astrue, 257 F. App'x 28, 30 n.5 (9th Cir. 2007) (emphasis in original); Sanchez v. Berryhill, 2017 WL 5508515, at *6 (C.D. Cal. Nov. 16, 2017) (noting this apparent distinction in Gardner).

Moreover, the ALJ's definition of "frequently" as "occurring from one-third to two thirds of the time" (AR 844) appears to conflict with "repetitive," but it is not entirely clear from the case law. Alvarado, 2018 WL 4616344 at *5 (remanding because "the conclusion that Plaintiff could perform job tasks frequently is not necessarily consistent with a finding that Plaintiff was restricted from performing those activities repetitively"); Brooks v. Astrue, 2012 WL 2373628, at *5 (C.D. Cal. June 22, 2012) (remanding because opinion that claimant was precluded from using her right shoulder, elbow, and left arm on a "repetitive" basis was inconsistent with the ALJ's finding that she was capable of performing "frequent" handling, fingering, feeling, and reaching). It is less clear whether the ALJ's definition of "occasionally" as "occurring from very little up to one-third of the time" (AR 844), conflicts with repetitive. See Freddy E. P. v. Berryhill, 2019 WL 266963, at *7 (C.D. Cal. Jan. 18, 2019) (noting that "[a]t least one VE has testified that in California workers' compensation jargon, a restriction against 'repetitive' activity equates to the ability to perform the activity occasionally" and that "[s]ome courts outside the Ninth Circuit have found no inconsistency in the determination that claimant cannot perform 'repetitive' motion but can perform occupations requiring 'frequent' motion"). However, because the ALJ failed to translate the

opinion into the social security context and make that determination, the issue is unreviewable by this Court. See Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Alvarado, 2018 WL 4616344 at *5; Brooks, 2012 WL 2373628 at *5.

Looking to the ME's testimony, to which the ALJ assigned "significant weight," does not alter the outcome as the Commissioner suggests. AR 847; Jt. Stip. at 10-12. As with the ALJ, the ME did not translate the workers' compensation terms. In fact, he stated that he was never a qualified medical examiner and had never completed workers' compensation evaluations, acknowledged the specialized "constructed terms" used in that industry, and stated that "[m]ost of us avoid [those terms]." AR 866-67. He also could not define "qualified injured worker" or "repetitive," and testified that he was "not quite sure what [the latter term] really means." AR 863-64, 866. Accordingly, the Court cannot find the error harmless based on the ME's testimony. Molina, 674 F.3d at 1115; see also Rebecca W. v. Saul, 2019 WL 7819669, at *13 (E.D. Wash. Aug. 19, 2019) (error in disregarding medical source harmful where it was only medical source that opined claimant had physical limitations that restricted her ability to use her arm for repetitive work); cf. McHugh v. Astrue, 2008 WL 3876475, at *5 (N.D. Cal. Aug. 18, 2008) (error in disregarding workers' compensation report harmless where ME had testified at claimant's workers' compensation hearings and discussed the findings of omitted report in his testimony).

As a result, the Court finds the ALJ erred in failing to translate Dr. Marinow's opinion into the social security context, and, without such translation, the Court cannot find such error harmless. See Brown-Hunter, 806 F.3d at 492 (if ALJ fails to specify reasoning, reviewing court will be unable to meaningfully review without substituting its conclusion for the ALJ's, or

speculating as to grounds for the ALJ's conclusions; in such a situation, "such error will usually not be harmless"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."); Dunlap v. Astrue, 2011 WL 1135357, at *6 (E.D. Cal. Mar. 25, 2011) (court could not determine harmlessness of error because it was unable to "determine how the VE would have responded if he had been given a hypothetical containing [examining physician]'s actual opinion.").

### B.  Remand is appropriate.

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Plaintiff contends that, as the record contains the "assumption laid out by Dr. Marinow" that Plaintiff can only occasionally move her head and neck in all directions, which, when combined with the VE's testimony that such a restriction would eliminate "any other work," crediting such evidence as true would permit an award of immediate benefits. Jt. Stip. at 9 (citing AR 875-76). However, because neither the ALJ nor the ME specifically tied Dr. Marinow's term "repetitively" to "occasionally," and, as explained, there was no attempt

to define the workers' compensation term of art, the Court cannot say the record is complete on the issue and declines to enter an award of immediate benefits.

The Court is aware that this case has been reversed two previous occasions on issues related to Plaintiff's neck limitation. Plaintiff correctly notes that the Commissioner did not address the Desrosiers workers' compensation translation issue in the Joint Stipulation, and she argues the Commissioner has had more than ample opportunity to address this key evidence. Jt. Stip. at 13-14. The Court has considered waiver of the issue for ignoring the issue in this third trip to the District Court, as Plaintiff suggests. Id.; Kinley v. Astrue, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response."). However, in similar fashion, Plaintiff has had previous opportunities to raise this issue in her many challenges to Dr. Marinow's opinion and, although Plaintiff's exceptions before the Appeals Council challenged the ALJ's findings regarding the opinion, she did not raise the issue of workers' compensation translation. AR 1122-24. Accordingly, the Appeals Council did not have an opportunity to address this specific challenge in the first instance. Steward v. Astrue, 2012 WL 4210624, at *4 (D. Or. Sept. 19, 2012) (finding claimant waived argument not raised before Appeals Council). It seems likely the Appeals Council would have addressed the issue considering it ruled on Plaintiff's argument as presented in the exceptions. AR 831.

Accordingly, considering the incomplete briefing here and below by both parties and because the underlying decision and record are insufficient to determine the harmfulness of the error, the Court reverses and remands the

case to the Agency yet again. Because it is unclear whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the Agency shall translate Dr. Marinow's opinion into the social security context, obtain competent workers' compensation ME testimony or interrogatories if necessary, then assess the repetitive neck limitation and all other significant findings in Dr. Marinow's and any other relevant opinion, reassess Plaintiff's RFC and determine whether Plaintiff's limitations conflict with the RFC, and proceed through the remaining steps of the disability analysis to determine whether Plaintiff can perform other work, if any, that exists in significant numbers.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: March 31, 2021

_____
JOHN D. EARLY
United States Magistrate Judge